USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1408 UNITED STATES, Appellee, v. TIMOTHY P. NORTON, Defendant-Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Breyer,* Chief Judge, ___________ Torruella and Boudin, Circuit Judges. ______________ _____________________ Frank G. Kelleher, by Appointment of Court, with whom ___________________ Timothy P. Norton pro se was on brief for appellant. _________________ Michael J. Pelgro, Assistant United States Attorney, with __________________ whom Donald K. Stern, United States Attorney, was on brief for _______________ appellee. ____________________ ____________________ ____________________ * Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). TORRUELLA, Circuit Judge. A federal grand jury ______________ returned an indictment charging Timothy P. Norton with being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). Following trial, the jury found Norton guilty, and the district court then sentenced him to 180 months in prison. Norton now appeals his conviction, contending that the district court abused its discretion when it permitted the government to cross-examine Norton about a prior conviction for carrying a firearm. We affirm. FACTS FACTS _____ The testimony and other evidence properly introduced at trial, viewed in the light most favorable to the verdict, established the following facts. United States v. Rivera- ______________ _______ Santiago, 872 F.2d 1073, 1078-79 (1st Cir.), cert. denied, 492 ________ ____________ U.S. 910 (1989). On October 14, 1990, Norton and Kevin Johnson were drinking in "The Bullpen Sports Bar and Grill" ("The Bullpen") in Somerville, Massachusetts. The two men became involved in an altercation with one of the owners, James Hough, and a manager, Leo Kelley. Norton and Johnson were ejected from The Bullpen. The Somerville police then arrived at the scene. After The Bullpen had closed for the night, Norton and Johnson returned to the premises. What happened when the two men returned was disputed at trial. Because of the earlier disturbance, Police Officers Thomas Silveira and Neil Brennan were assigned to patrol the vicinity around The Bullpen. Officer -2- Silveira observed a vehicle, later identified as Norton's Cadillac Seville, stopped in the street in front of The Bullpen. Officer Silveira observed Norton pointing what appeared to be a pistol toward the front door of The Bullpen. He testified that he then saw a flash from the weapon. Norton then got into the Cadillac. Officer Silveira then observed Johnson run to the front of The Bullpen, he saw a large flash and explosion, and saw Johnson get back into Norton's Cadillac. Somerville Police Detective Ernest Nadile had earlier returned to The Bullpen to protect the employees who remained and were present after the bar closed. Detective Nadile testified that he heard a shot ring out. He then "hit the floor," and heard another shot approximately three seconds later. As Norton's Cadillac sped away, Officer Silveira and Officer Brennan pursued the vehicle. During the pursuit, Officer Brennan observed the driver of the Cadillac throw what appeared to be a gun out the driver's side window, and he heard the gun hit a parked car and slide across the pavement. Other officers subsequently joined in the chase, and they eventually stopped the Cadillac. A struggle then ensued between Officer Brennan and Norton. Officer Brennan testified that he heard Norton repeatedly utter that he had not shot at a cop. The police officers arrested both Norton and Johnson. Officer Brennan then went back to the location in Somerville where he had seen Norton throw an object, and found a Colt Combat Commander .45 caliber semi-automatic pistol in the -3- street. Johnson testified on behalf of the defense. He stated that after being ejected from The Bullpen, he and Norton went to the Jumbo Pub, another bar, and then to the Moose Club, where they drank for the next few hours. Johnson testified that while at the Moose Club, a friend gave him an "M-80," a big firecracker. After leaving the Moose Club, Johnson discovered that he had lost his wallet and Norton drove him back to The Bullpen to look for the missing item. Johnson then found his wallet against the curb of the street. While returning to Norton's Cadillac, Johnson took out the "M-80," lit it, and threw it in the general vicinity of The Bullpen's front door. Johnson testified that he did not see a gun that night and that he did not know anything about a gun. Norton also chose to testify on his own behalf. Prior to Norton's testimony, the court conducted a voir dire with him concerning his decision. During the course of the colloquy, Norton made reference to his prior criminal record and discussed the possibility that the government might try to impeach him by means of his prior convictions. Prompted by the exchange, the district court asked the government to review Norton's prior criminal record so that the court could make an advance ruling on the admissibility of Norton's prior convictions under Fed. R. Evid. 609. The government then advised the district court of numerous prior convictions extending back to 1954. Upon learning that the government had not provided advance written notice to -4- the defense of its intent to use these convictions at trial, as required by Fed. R. Evid. 609(b), the court ruled that the government would not be allowed to impeach Norton with any convictions that were greater than ten years old, including a 1963 conviction for unlawfully carrying a firearm. The court then engaged in a balancing process to rule on the admissibility of the more recent convictions. The court ruled that the government could inquire about a 1991 conviction for malicious destruction of property and a 1985 conviction for possession of cocaine with intent to distribute, but that it could not inquire about other convictions. After the court's advance ruling, Norton took the stand, and essentially testified to the same chain of events to which Johnson had testified. Norton testified that he never saw a gun that night, that he never possessed a gun that night, and that he never threw a gun out of the driver's side window of his Cadillac. During direct examination, the following exchange occurred between Norton and his counsel: Q. Now, at some point did you have a gun in your possession during the chase? A. I never had a gun in my life in that car. Or on my possession or anywhere. During cross-examination, a sidebar conference took place, where the government requested that it be able to present evidence of Norton's 1963 conviction for unlawfully carrying a firearm, because Norton had stated on direct examination that he never had -5- a gun in all his life. The following exchange occurred: Mr. Pelgro: ". . . in connection with the prior convictions that are over ten years, you ruled, of course, they were not admissible under Rule 609. The defendant in the course of his direct examination, when asked a question about whether he had a gun that night, stated he never had a gun in all my life. I've got a conviction from 1963 of him carrying a revolver. I think it's fair game on his credibility to ask him about that. The Court: I think that's so. Mr. Kelleher: I would object to it. I think that was an emotional response, I never had a gun in all my life. The Court: Well, it was wrong. With the court's permission, the government proceeded to ask Norton about his 1963 firearm conviction. On cross-examination, the following exchange took place: Q. Now, sir, I believe you testified on Friday in response to your lawyer's questions that you never had a gun in your entire life; is that correct? A. I didn't say I never had a gun in my entire life, sir. Q. Well, when your lawyer asked you if you had a gun that night, didn't you say I never had one in all my life? A. I never had one in my hand in all my life, yes. Q. You never had one in your hand? A. No, sir, I didn't. Q. It is true, is it not, that you were previously convicted of unlawfully carrying a revolver; isn't that correct? A. I pled guilty to that. I was involved with another gentleman, sir. You're referring to 1963? -6- Q. Yes. A. I was a young man then. I was a very young man then. Q. So you were mistaken when you stated that you never had one in all your life? A. It wasn't in my hand. It was one revolver and it never was in my hand. Q. You did plead guilty, though to carrying a revolver, didn't you? A. That was the cumulation of the charge. I pled guilty and received three to five years. The jury subsequently found Norton guilty. This appeal followed. ANALYSIS ANALYSIS ________ A. Standard of Review A. Standard of Review The district court is vested with broad discretionary power to admit or exclude evidence. See United States v. ___ _____________ Innamorati, 996 F.2d 456, 478 (1st Cir.), cert. denied, 114 S. __________ _____________ Ct. 409 (1993); United States v. George, 752 F.2d 749, 756 (1st _____________ ______ Cir. 1985). A district court has considerable discretion to discern the relevancy of evidence. United States v. Tierney, 760 _____________ _______ F.2d 382, 387 (1st Cir.), cert. denied, 474 U.S. 843 (1985). ____________ Similarly, the court has great latitude to gauge the relevance of the evidence against the unfair prejudice which may result from its admission. Id.; United States v. Griffin, 818 F.2d 97, 101 __ _____________ _______ (1st Cir.), cert. denied, 484 U.S. 844 (1987). "[O]nly rarely - ____________ and in extraordinarily compelling circumstances - will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." United States v. De La Cruz, _____________ __________ -7- 902 F.2d 121, 124 (1st Cir. 1990) (quoting Freeman v. Package _______ _______ Machinery Co., 865 F.2d 1331, 1340 (1st Cir. 1988)). _____________ -8- B. Governing Evidentiary Principles B. Governing Evidentiary Principles Norton contends that his 1963 firearm conviction was not admissible under Fed. R. Evid. 609, and that the court violated a number of requirements of this rule when it admitted the conviction. Rule 609, however, is not controlling in this context. Rule 609 is an impeachment rule which governs the admissibility of evidence of certain criminal convictions of a witness when offered to impeach that witness by proving character for untruthfulness. Fed. R. Evid. 609 advisory committee's notes; 28 Wright and Gold, Federal Practice and Procedure, _______________________________ 6133 at p. 204; see, e.g., United States v. Brown, 603 F.2d 1022, ___ ____ _____________ _____ 1027-29 (1st Cir. 1979); United States v. Oakes, 565 F.2d 170, ______________ _____ 173 (1st Cir. 1977). The premise behind the rule is that a witness who has previously been convicted of a felony, or a crime involving dishonesty or a false statement, is more likely to lie than is a person with a spotless past. Federal Practice, 6132 _________________ at pp. 190-94. Thus, Rule 609 evidence is admissible for the purpose of attacking credibility generally, but the rule does not address the admissibility of prior convictions when they are offered for another purpose. Id. at pp. 205-06; see United __ ___ ______ States v. Babbitt, 683 F.2d 21, 25 (1st Cir. 1982) (introduction ______ _______ of evidence of a prior conviction did not implicate Rule 609 where defendant denied having a police record on direct examination and prosecutor introduced conviction on cross- examination to bring to light actual facts); United States v. _____________ L pez, 979 F.2d 1024, 1033 (5th Cir. 1992) (neither Rule 608 or _____ -9- 609 applies "in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue"), cert. denied sub nom. Ram rez v. United States, _____________________ _______ _____________ 113 S. Ct. 2349 (1993); cf. United States v. Barrett, 766 F.2d ___ _____________ _______ 609, 619 (1st Cir.) (where a defendant introduces, and makes material, specific conduct in his direct testimony, proving the falsity of such testimony is a fair target for the prosecution and Rule 608 is not implicated), cert. denied, 474 U.S. 923 _____________ (1985).2 Instead, the general strictures of Fed. R. Evid. 4023 and 4034 were invoked when the government proffered the 1963 firearm conviction to contradict material false testimony injected into the trial by Norton himself. See L pez, 979 F.2d ___ _____ at 1034. Prior convictions are admissible under Rules 402 and ____________________ 2 At trial, the government argued that the 1963 firearm conviction was relevant to shed light on Norton's credibility. The record is somewhat unclear as to the precise grounds the court ultimately used to justify its decision to admit the conviction. Even if, however, the court admitted the evidence under Rule 609, we can still affirm its ruling if the evidence is admissible under another rule. A district court's reliance on an improper ground for admitting the evidence will not amount to harmful error if other valid grounds for admission exist, because such a situation does not affect a defendant's substantial rights. L pez, 979 F.2d at 1033. _____ 3 Fed. R. Evid. 402 provides in pertinent part that "[a]ll relevant evidence is admissible . . . " Fed. R. Evid. 401 defines "[r]elevant evidence" as ". . . evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 4 Fed. R. Evid. 403 provides in pertinent part: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . . " -10- 403 to contradict specific testimony, as long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice. L pez, 979 F.2d at 1034; cf. _____ ___ United States v. Beauchamp, 986 F.2d 1, 3 (1st Cir. 1993). ______________ _________ Evidence which tends to disprove a witness's testimony about a material issue in the case is relevant. L pez, 979 F.2d at 1034. _____ In the present case, Norton's possession of the firearm was the sole contested issue at trial.5 We agree with the government that the district court could have found that the evidence of Norton's prior firearm conviction was relevant to this material issue. See Babbitt, 683 F.2d at 25; L pez, 979 ___ _______ _____ F.2d at 1034. Norton testified on direct examination that he did not have a firearm on the night in question. Norton then attempted to add credence to this claim by testifying to the effect that he had never possessed a gun in his life. If Norton had never possessed a gun prior to the night in question, it was more likely than it would be without this evidence that he did not possess a gun on the night in question. Once Norton denied that he had ever possessed a gun, he opened the door to the issue of his prior or present firearm possession. The fact that Norton had been previously convicted of carrying a firearm was highly ____________________ 5 Under 18 U.S.C. 922(g)(1), the Government had to prove that 1) Norton had previously been convicted of an offense punishable by imprisonment exceeding one year; and 2) he knowingly possessed a firearm in or affecting commerce. United States v. Wight, 968 _____________ _____ F.2d 1393, 1397 (1st Cir. 1992). -11- relevant to contradict his specific misleading assertion.6 As with most evidentiary questions, the court was then required to consider the unfair prejudice that would stem from admitting this prior conviction. As a primary matter, Norton introduced the issue of whether he had previously possessed a firearm into the trial. Norton cannot be heard to claim that he was "unfairly prejudiced" by the fact that the government then established, through the 1963 conviction, that he lied, or at the least, misled the jury, when he testified that he had never possessed a firearm. See, e.g., Oakes, 565 F.2d at 172 (an ___ ____ _____ accused should not "be heard to complain of any resulting prejudice created by his own actions"). Moreover, the prejudice to Norton which resulted from admitting the conviction was relatively slight. While the evidence did tend to demonstrate a propensity by Norton to possess firearms, here, that effect was minimal. The conviction was 29 years old, and, as Norton pointed out on cross-examination, his transgression had occurred many years ago, when he was a "very young man." The court also limited any possible prejudicial spill-over of such evidence by repeatedly instructing the jury as to the limited purpose of ____________________ 6 Norton claims that the court had previously ruled that the 1963 firearm conviction was generally not admissible under Fed. R. Evid. 609, and that the court could not then change this ruling during the course of Norton's testimony. Advance rulings on the admissibility of prior convictions for impeachment purposes, however, may always be altered as the case unfolds. United States v. Nivica, 887 F.2d 1110, 1116 (1st Cir. 1989), _____________ ______ cert. denied, 494 U.S. 1005 (1990); Oakes, 565 F.2d at 172. The ____________ _____ court's advance ruling was not a license for Norton to proffer false or misleading testimony. -12- prior conviction evidence.7 Under these circumstances, the court properly concluded that the probative value of Norton's 1963 firearm conviction outweighed any unfair prejudice to him. The district court's decision to admit Norton's prior firearm conviction was free from error. Therefore, we affirm. ______ ____________________ 7 When the government asked Norton about his 1985 cocaine conviction, the court instructed the jury as follows: . . . And there's another thing here, because this is the person accused. If you were to draw from the fact that back then he was convicted of this drug crime that he's a bad person and therefore he must have done this crime, that would violate your oath. It's not fair, it's not what you're asked here. You're asked whether the government proves this crime, the reason that we're all here together in court, felon in possession of a firearm, whether they proved this crime beyond a reasonable doubt. You may consider that crime on the issue of whether he's a felon, and you may consider that crime on the issue of whether you believe his testimony. But don't just come to the conclusion he's some sort of bad person so he must have done this. That would violate your oath as jurors. The court repeated the essence of this instruction when the government asked Norton about his 1991 conviction for malicious destruction of property. -13-