USCA1 Opinion

 

 [This opinion is For Pubication as of October 21, 1996.] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1093 UNITED STATES, Appellee, v. RAYMOND J. BLAIS, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary M. Lisi, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ _____________________ John J. Barter, by Appointment of the Court, for appellant. ______________ Margaret E. Curran, Assistant United States Attorney, with __________________ whom Sheldon Whitehouse, United States Attorney, and Stephanie S. __________________ ____________ Browne, Assistant United States Attorney, were on brief for ______ appellee. ____________________ August 28, 1996 ____________________ TORRUELLA, Chief Judge. Defendant-appellant Raymond J. TORRUELLA, Chief Judge. ___________ Blais ("Blais") appeals his conviction under 18 U.S.C.  922(g)(1), as well as his resulting sentence of 235 months in a federal corrections facility plus five years' supervised release. We affirm the judgment of the district court in both regards. I. BACKGROUND I. BACKGROUND __________ On February 3, 1994, Blais was arrested in Providence, Rhode Island, after Providence police discovered a firearm in his apartment. On May 27, 1994, a federal grand jury returned a one- count indictment charging Blais with being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). On June 29, 1994, Blais filed a motion to suppress, which was denied on October 12, 1994. Viewed in the light most favorable to the verdict, United States v. Bartelho, 71 F.3d 436, 438 (1st Cir. 1995), the ______________ ________ following facts could have been found by a reasonable jury. O n February 3, 1994, Providence Police Reserve Officers Timothy Dupuis ("Officer Dupuis") and David Paolino ("Officer Paolino") went to 160 Benedict Street, a Providence Housing Authority high- rise apartment building, in response to a report of a disturbance. The complainant, Geraldine McGill ("McGill"), alleged that Blais had threatened her verbally and physically, and that he possessed a firearm. In response, Officer Dupuis, Officer Paolino and a security guard, Alan Rivera ("Rivera"), headed for Blais's apartment. Officer Dupuis walked down the hallway first, and he spotted a man, whom he later learned was -2- Blais, carrying a handgun. After seeing the man enter an apartment, Officers Dupuis and Paolino knocked on the door and announced that they were police officers. Failing to receive a response, they again knocked and announced their identities, after which the apartment's occupant asked who was there. Officer Dupuis again stated that it was the police. Failing to obtain any further response, the officers knocked and announced themselves a third time. In response to another inquiry, Officer Dupuis stated that it was the police and that the occupant should open the door. At this point, Blais opened the door and invited them in, saying, "Come on in, I'll talk to you in my apartment." Officers Dupuis and Paolino, and then later Rivera, entered the apartment, which consisted of a single open room that functioned as a bedroom, living room and dining room. The officers proceeded to question Blais, who appeared intoxicated, about the incident with McGill. At some point during this questioning, Blais sat down on the corner of the bed, and Officer Dupuis spotted a firearm lying on the bed behind Blais. At trial, the parties stipulated as to Blais's prior conviction of a crime punishable by a term of more than one year in prison prior to February 3, 1994, and on November 8, 1994, the jury returned a verdict of guilty on the indictment's lone count. On January 11, 1995, Judge Lisi sentenced Blais to 235 months in prison, as well as a 5-year term of supervised release and the statutory assessments. -3- II. DISCUSSION II. DISCUSSION __________ Blais makes four types of argument. The first set hinges on his contention that, in light of United States v. ______________ L pez, ___ U.S. ___, 115 S. Ct. 1624, 1626-27 (1995), his _____ indictment, his jury instructions and his conviction are unconstitutional, or, failing that, the government failed to meet its burden under L pez with respect to showing an effect on _____ interstate commerce. Second, Blais contests the district court's denial of his motion to suppress. Third, he challenges the district court's denial of his motion for exculpatory evidence. Fourth, and finally, he argues that the district court erred by refusing to limit or identify which of Blais's prior convictions it would allow the government to introduce if he were to deny committing the present offense. A. The Constitutionality of Section 922(g)(1), A. The Constitutionality of Section 922(g)(1), Interstate Commerce and Related Arguments Interstate Commerce and Related Arguments Blais makes four related arguments regarding section 922(g)(1) and the issue of whether his conviction is pursuant to a proper exercise of the power of the federal government. Citing L pez, ___ U.S. ___, 115 S. Ct. 1624, Blais argues that: (1) the _____ statute under which he was charged and convicted is unconstitutional; (2) his indictment was defective for lack of any allegation of effect on interstate commerce; (3) the jury was improperly instructed in a manner that omitted any element of substantial effect on interstate commerce; and (4) the district court erred in denying his motion for a judgment of acquittal -4- based on the Government's failure to meet its burden to show an effect on interstate commerce. In L pez, the Supreme Court struck down the Gun-Free _____ School Zones Act, 18 U.S.C. 922(q), which prohibited a person from possessing a gun while in a "school zone." L pez, ___ U.S. _____ at ___, 115 S. Ct. at 1631; see United States v. McAllister, 77 ___ ______________ __________ F.3d 387, 389 (1st Cir. 1996). The Court held that in passing section 922(q), Congress exceeded its power under the Commerce Clause because that statute was not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce. L pez, ___ U.S. at ___, 115 S. Ct. at 1631. Blais's argument _____ with respect to section 922(g)(1) is essentially that: (1) the statute provides that it is unlawful for a felon to ship or transport in interstate or foreign commerce, or possess in or _______ affecting commerce, any firearm or ____________________ ammunition; or to receive any firearms or ammunition which has been shipped or transported in interstate commerce, 18 U.S.C. 922(g)(1) (emphasis added); and (2) this court should not assume that Congress must have meant "affecting interstate __________ commerce" when it said "affecting commerce" with respect to firearm possession by a felon. As a result, claims Blais, he was charged pursuant to an unconstitutional statute. -5- However, Blais's challenge to the statute's constitutionality is foreclosed by previous decisions of this court. Since L pez, this court has twice ruled that a facial _____ challenge to the constitutionality of the statute at issue, 18 U.S.C. 922(g)(1), is "hopeless on . . . the law." United States v. Bennett, 75 F.3d 40, 49 (1st Cir. 1996), 75 F.3d _____________ _______ 40, 49 (1st cir. 1996) (citing Scarborough v. United States, 431 ___________ _____________ U.S. 563 (1977) (discussed in United States v. L pez, ___ U.S. _____________ _____ ___, 115 S. Ct. 1624 (1995))) ; United States v. Abernathy, ___ _____________ _________ F.3d ___, 1996 WL 199620, *2 (1st Cir. 1996) (rejecting post- L pez Commerce Clause-based challenge to power of Congress to _____ enact 922(g)(1) and 922(k) and quoting Bennett's description _______ of "hopeless[ness]")); see also United States v. Joost, ___ F.3d _________ _____________ _____ ___, No. 95-2032, slip op. at 17 (1st Cir. Aug. 7, 1996). The implication of our holding in Bennett is that Scarborough is _______ ___________ still good law after L pez. Bennett, 75 F.3d at 49. We state _____ _______ that here more fully. In so doing, we are in accord with the other circuit courts that have confronted similar post-L pez _____ challenges to section 922(g)(1). See United States v. ___ _______________ McAllister, 77 F.3d 387, 390 (11th Cir. 1996) (stating that __________ "[n]othing in L pez suggests that the 'minimal nexus' test should _____ be changed"); United States v. Sorrentino, 72 F.3d 294, 296-97 ______________ __________ (2d Cir. 1995); United States v. Bell, 70 F.3d 495, 497-98 (7th _____________ ____ Cir. 1995); United States v. Hinton, 69 F.3d 534, 1995 WL 623876 _____________ ______ (per curiam) (unpublished decision 4th Cir. 1995), cert. denied, ____________ 116 S. Ct. 1026 (1996); United States v. Bolton, 68 F.3d 396, 400 _____________ ______ -6- (10th Cir. 1995), cert. denied, 116 S. Ct. 966 (1996); United ____________ ______ States v. Shelton, 66 F.3d 991 (8th Cir. 1995) (per curiam), ______ _______ cert. denied, 116 S. Ct. 1364 (1996); United States v. Mosby, 60 ____________ ______________ _____ F.3d 454, 456 (8th Cir.), cert. denied, 116 S. Ct. 938 (1996); ____________ United States v. Hanna, 55 F.3d 1456, 1462 n.2 (9th Cir. 1995); _____________ _____ see also United States v. Spires, 79 F.3d 464, 466 (5th Cir. ________ _____________ ______ 1996) (upholding the statute under plain error review). We also note in passing that, confronting a L pez-based challenge, this _____ court also has upheld charges for possession of a firearm with an obliterated serial number under 18 U.S.C. 922(k) as constitutional, and that statute's language, like the language Blais challenges, also makes it unlawful for a felon to "possess in or affecting commerce, any firearm or ammunition." United ______ States v. D az-Mart nez, 71 F.3d 946, 953 (1st Cir. 1995). ______ _____________ Given the constitutionality of the statute, we believe that the indictment and the jury instructions are similarly valid, since both tracked the language of the statute in question. Furthermore, the district court read to the jury both the statute and the indictment and specifically instructed the jury that as one of the elements of the crime in question, the prosecution had to prove beyond a reasonable doubt that the firearm had been in or affecting interstate commerce. The __________ district court stated that "[t]he Government may meet its burden with respect to this element by proving a connection or link between interstate commerce and the possession of the firearm." The court went on to state that "[i]t is sufficient for the -7- Government to satisfy this element to prove that the firearm, allegedly possessed by the Defendant, had[,] at some time previously, travelled across a state line" -- a proposition supported by the Supreme Court's holding in Scarborough, 431 U.S. ___________ at 575 (holding, under the predecessor statute to 922(g)(1), that proof that the possessed firearm previously travelled in interstate commerce was sufficient to establish an adequate interstate nexus). Blais also argues that the district court should have allowed his motion for a judgment of acquittal on the grounds that the government's sole evidence on the element of "affecting interstate commerce" was the out-of-state manufacture of the handgun. Having already rejected his arguments about L pez's _____ alteration of the Scarborough standard of minimal nexus, we ___________ conclude that the evidence proffered by the government was sufficient to meet its required showing of minimal nexus with interstate commerce. See McAllister, 77 F.3d at 390 (evidence ___ __________ that a gun had previously travelled in interstate commerce before felon's possession held sufficient to meet required showing for minimal nexus). As a result, we uphold the district court's denial of Blais's motion for a judgment of acquittal. B. The Motion to Suppress B. The Motion to Suppress With respect to the motion to suppress, we review a district court's findings of fact only for clear error, Bartelho, ________ 71 F.3d at 441; United States v. Mart nez-Molina, 64 F.3d 719, ______________ _______________ 726 (1st Cir. 1995), but questions of law are subject to de novo _______ -8- review, Ornelas v. United States, 116 S. Ct. 1657 (1996); _______ ______________ Bartelho, 71 F.3d at 441; United States v. Zapata, 18 F.3d 971, ________ _____________ ______ 975 (1st Cir. 1994). Prior to trial, Blais moved to suppress the evidence obtained during the officers' February 3 visit to his apartment. Based on the facts presented at the evidentiary hearing, the district court denied Blais's suppression motion. The district court rested its conclusion on the findings that the totality of the circumstances established that Blais voluntarily and knowingly invited the police officers into his apartment, and that the officers saw the gun lying on the bed in plain view.  We agree with the district court's denial of Blais's motion to suppress. Based on the testimony of Officer Dupuis, Officer Paolino and Rivera, the evidence at the suppression hearing reasonably supported the district court's finding that Blais gave his consent to entry, and that that consent was voluntary. Blais argues that the officers failed to advise him of his right to deny entry. However, while the failure to inform an individual that he has a right to withhold consent is a factor to be weighed in determining the issue of voluntariness, such a failure does not preclude a finding of valid consent. See ___ Schneckloth v. Bustamonte, 412 U.S. 218, 245 (1973); Zapata, 18 ___________ __________ ______ F.3d at 977. The district court also properly rejected any claim of coercion. While Blais claims that the circumstances were inherently coercive because he was a 69-year-old man confronted by two officers and a security guard, the evidence showed that -9- the three men did not enter until Blais invited them in on his own initiative. As a result, we conclude that the district court did not commit error in finding that Blais admitted the officers and the security guard into his apartment voluntarily. The district court found that testimony at the suppression hearing also showed that the firearm discovered was lying on the bed in plain view of the officers as they questioned Blais. Defendant's argument that the district court erred in making this finding is based on a challenge to the credibility of the officers and the security guard. However, credibility determinations are for the district court, not us, to make. See ___ United States v. Patrone, 948 F.2d 813, 816 (1st Cir. 1991), ______________ _______ cert. denied, 504 U.S. 978 (1992). And even if the testimony in ____________ question is, as Blais argues, subject to another plausible reading, the district court's choice of one of two competing interpretations of the evidence cannot be clearly erroneous. United States v. Cruz-Jim nez, 894 F.2d 1, 7 (1st Cir. 1990). _____________ ____________ Because we conclude that the district court's findings of invited entry and plain view were not erroneous, we affirm its denial of Blais's motion to suppress.  C. The Motion for Exculpatory Evidence C. The Motion for Exculpatory Evidence Blais contends that the district court erred in quashing certain subpoenas issued for the suppression hearing. On appeal, Blais points to quashed subpoenas for arrest records and reports of the Providence Police Department, including the report of the officers' interview with McGill. -10- First, Blais argues that the Jencks Act, 18 U.S.C. 3500, entitles him to these documents. However, the Act "establishes procedures whereby a criminal defendant may exercise his limited right to obtain previous statements made by government witnesses that are in the possession of the United States to be used for impeachment purposes." United States v. _____________ Neal, 36 F.3d 1190, 1197 (1st Cir. 1994). McGill was not a ____ government witness and did not testify. The statements of all the witnesses who did testify at the suppression hearing were turned over.  Second, Blais contends that the sought-after information constituted material he was entitled to under Brady _____ v. Maryland, 373 U.S. 83 (1963), for impeachment purposes. ________ However, Brady error occurs when the government suppresses _____ "material" information that is favorable to the defense. See ___ Gilday v. Callahan, 59 F.3d 257, 267 (1st Cir. 1995), cert. ______ ________ _____ denied, 116 S. Ct. 1269 (1996). Information is "material" "if ______ there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 _____________ ______ (1985). Blais has failed to articulate any theory demonstrating such a reasonable probability. In fact, Blais has failed to show that any of the additional arrest records or police reports that he seeks even exist. Indeed, McGill's statement could not have been exculpatory. While her complaint was the impetus for the -11- officers' and the security guard's visit, her statement could have had no relevance to the issues at the suppression hearing: whether Blais admitted the officers to his apartment voluntarily and whether the firearm was in plain view. As a result, we uphold the district court's decision to quash the subpoenas at issue. D. Blais's Prior Convictions D. Blais's Prior Convictions Blais also contends that the district court erred by failing to explain more fully its ruling with regard to the admissibility of his prior convictions. The ruling in question was rendered in response to Blais's motion in limine to exclude criminal convictions greater than ten years old. The government objected, filing a memorandum in support, arguing that the convictions should be admissible for impeachment of Blais pursuant to Federal Rule of Evidence 609. In the course of a hearing on the motion, the government withdrew its objection to the exclusion of all previous convictions save four which fell within the ten-year limit because Blais had been released from his prison term for those convictions less than ten years previously. By doing so, the government cleared the way for the exclusion of a number of Blais's previous convictions that involved the use or possession of firearms. The district court ruled that three convictions (for armed robbery, kidnapping and driving away in an automobile) could come in. The district court explained its ruling to defense counsel as follows: So we're left, [counsel], with three previous convictions, none of which are -12- greater than ten years old. The armed robbery, kidnapping and the unlawfully driving off an auto, which I'm ruling will be admissible to impeach the credibility of Mr. Blais should he decide to testify under 609. Depending upon what Mr. Blais says on the stand, the Government may seek permission of the Court to introduce any of the other convictions under another rule. Defense counsel sought further elaboration as to the last point, asking whether testimony denying the firearm possession charge would be viewed by the court as opening the door to the other convictions. The court responded: "read the Norton case. I'm ______ not going to do your homework for you." Blais argues that the court's cryptic reference to United States v. Norton, 26 F.3d 240 (1st Cir. 1994), provided ______________ ______ little guidance, since Norton recognizes that "[t]he district ______ court is vested with broad discretionary power to admit or exclude evidence." Id. at 243. Reading Norton, we do not agree. ___ ______ The defendant in Norton, like Blais, was charged with being a ______ _____ felon-in-possession, had a prior firearm conviction, and had succeeded in persuading the trial court to exclude as inadmissible all his prior convictions greater than ten years old, including his prior firearm conviction. However, in the course of his testimony, the defendant in Norton denied not only ______ possessing the gun identified in the indictment, but in fact denied having ever possessed a gun in his life. The prosecutor sought and was granted permission to introduce the prior firearm conviction to contradict the defendant's false and material testimony. In upholding the district court's ruling, this court -13- explained that "[o]nce Norton denied that he had ever possessed a gun, he opened the door to the issue of his prior or present firearm possession." Id. at 244. As a result, Norton could not ___ complain that he was unfairly prejudiced by the introduction of the conviction to show that he lied. Id. at 244-45. ___ We conclude that the district court's explanation was hardly cryptic. While it may have required that Blais's counsel do some reading, that is certainly not reversible error. III. CONCLUSION III. CONCLUSION __________ As a result of the foregoing, the judgment of the district court is affirmed. affirmed ________ -14-