

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-2009

# USA v. Gilmore

Precedential or Non-Precedential: Precedential

Docket No. 07-3139

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Gilmore" (2009). *2009 Decisions.* Paper 1956.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1956

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3139

UNITED STATES OF AMERICA

v.

WALTER GILMORE
a/k/a
BUTCH,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
District Court  No. 06-cr-00848
District Judge: Honorable Robert B. Kugler

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 9, 2008

Before: MCKEE, SMITH, and ROTH, *Circuit Judges*

(Opinion Filed: January 20, 2009)

1

Roland B. Jarvis, Esq.
1315 Walnut Street
Suite 1326
Philadelphia, PA 19107
       *Counsel for Appellant Walter Gilmore*

Christopher J. Christie
George S. Leone
John F. Romano
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
       *Counsel for Appellee the United States of America*

OPINION OF THE COURT

SMITH, *Circuit Judge.*

This case presents us with a textbook example of how trial counsel may properly use past criminal conduct to impeach a witness' testimony by contradiction. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. For the reasons set forth below, we will affirm.

I.

On June 26, 2006, Appellant Walter Gilmore called Cesar Severino, a suspected drug dealer, and requested that they

meet in person. After the meeting, Severino contacted Julio Lebron and asked him to deliver a kilogram of cocaine from Philadelphia, PA, to Camden, NJ. Lebron agreed. Upon arriving in Camden, Lebron went to Severino's house where Severino tested the cocaine in Lebron's presence.

That evening, Gilmore called Severino and told him to "bring 2 99 cent[] sodas and come to my house." (J.A. 32.) Severino then left his home carrying the cocaine in a black plastic grocery bag. After arriving at Gilmore's house, Severino walked in with a black plastic grocery bag, stayed for about five minutes, and left without it.

When Severino returned home, he paid Lebron $20,000 for the cocaine. Lebron took the money, put it in his wife's purse, and began to drive back to Philadelphia. Along the way, police stopped Lebron's car for speeding, and recovered $20,418 from Lebron's wife's purse.

On July 26, 2006, a grand jury indicted Gilmore and Lebron each on one count of knowingly and intentionally conspiring to distribute and to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Eight days later, agents from the Drug Enforcement Administration ("DEA") arrested Gilmore and searched his home pursuant to valid warrants. The agents recovered a cell phone, a cell phone bill, and drug paraphernalia, but no cocaine.

3

Gilmore went to trial on February 14, 2007. During his trial, the Government offered evidence that Gilmore's June 26, 2006 phone calls and meetings with Severino concerned the purchase of cocaine. DEA agents testified that, as part of an investigation into Severino's drug-related activities, they conducted surveillance during the meetings between Gilmore and Severino, and recorded the various phone conversations discussing the transaction pursuant to a court-authorized wiretap. Lebron, who by then was cooperating with the Government, testified that he purchased the cocaine in Philadelphia at Severino's request, brought it to Camden, and waited in Severino's house as Severino left with the cocaine and returned with $20,000. DEA Special Agent Darrin Del Viscio testified that Gilmore's reference to "two 99-cent sodas" was code for a kilogram of cocaine. The Government also pointed to Gilmore's phone records, which evidenced numerous phone calls to and from numbers associated with Severino even after June 26, 2006.

Gilmore testified on his own behalf and denied buying any cocaine from Severino. Gilmore did not deny that he had multiple meetings and phone conversations with Severino on June 26, 2006. Instead, Gilmore testified that those phone calls and meetings concerned a loan that Severino had made to Gilmore. Gilmore also testified that his request for two 99-cent sodas was not code for a drug transaction, but that he actually wanted Severino to bring him two two-liter sodas.

4

During his direct examination, Gilmore and his attorney had the following exchange:

Q: After you were indicted in this case, you got a chance to go through the evidence?

A: Uh-huh.

Q: That they had against you to show that you were a drug dealer, correct?

A: Yes.

Q: And we went through that evidence, didn't we?

A: Yes, we did.

Q: And you see any evidence in this case that you're a drug dealer, sir?

A: No, I didn't sell no drugs. *I never did*.

(J.A. 743–44) (emphasis added).

Before beginning its cross-examination, the Government advised the District Court that it intended to ask Gilmore about

5

two prior felony drug distribution convictions[1] in order to contradict his sworn statement that he never sold drugs. Gilmore objected. The District Court overruled the objection, stating that it was "going to permit the government to cross examine [Gilmore] on that conviction, to contradict his statement that he's never sold drugs." (J.A. 745.) The District Court, however, would not allow the Government to offer the certified judgments into evidence unless Gilmore denied the convictions. The District Court also informed the parties that it would issue a limiting instruction to the jury to use the convictions only for credibility purposes and not as evidence of guilt.

Pursuant to the District Court's ruling, the Government cross-examined Gilmore about his prior drug convictions:

Q: Mr. Gilmore, you testified on direct that you never sold drugs, correct?

A: Yes, I did.

---

[1] On March 12, 1992, Gilmore pleaded guilty to 1) possession with intent to distribute controlled dangerous substances, and 2) possession of controlled dangerous substances with intent to distribute within 1,000 feet of a school. He was paroled on July 5, 1995, and discharged from parole on March 3, 1998.

Q: Isn't it a fact, Mr. Gilmore, that you were convicted here in the Superior Court of Camden County on May 22nd, 1992 of possession with intent to distribute [controlled dangerous substances]? And possession of [controlled dangerous substances] with intent to distribute within a thousand feet of a school?

A: That was a long time ago.

Q: But you were convicted of selling drugs?

A: Yes, I was, a long time ago, and I changed my life around when I got out.

(J.A. 788.) The District Court provided a limiting instruction to the jury following this testimony, and repeated that instruction in its final charge. The Government did not offer any additional proof of the convictions into evidence.

On February 22, 2007, the jury found Gilmore guilty of conspiring to distribute and to possess with the intent to distribute 500 grams or more of cocaine. Before Gilmore's sentencing, the Government requested a two-level enhancement for obstruction of justice pursuant to Sentencing Guideline § 3C1.1 because of Gilmore's allegedly perjurious testimony, which included his denial of any involvement in any drug transaction. The District Court granted the enhancement, which increased Gilmore's advisory range of incarceration under the

7

Sentencing Guidelines to 87 to 108 months. The District Court then sentenced Gilmore to 90 months of imprisonment followed by five years of supervised release. Gilmore filed a timely appeal of his conviction and sentence.

## II.

Gilmore argues that his conviction should be vacated because the District Court improperly admitted evidence of his prior felony drug convictions at trial.[2] We review the District

---

[2] We are satisfied that Gilmore's other grounds for appeal are without merit, and do not require extensive discussion. First, Gilmore asserts that the Government unlawfully withheld certain information about a particular phone number, but he has not shown how any of this information was material to his preparation of a defense, or favorable to him on the issue of his guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83 (1963); Fed. R. Crim. P. 16. Second, the Government's delay in seeking an indictment against Gilmore and its failure to record the in-person meetings between Gilmore and Severino are not so "shocking, outrageous, and clearly intolerable" as to be an "outrageous law enforcement investigative technique" that rises to the level of a due process violation. *See United States v. Nolan-Cooper*, 155 F.3d 221, 230–31 (3d Cir. 1998). Third, the District Court did not abuse its discretion in allowing Special Agent Del Viscio, an experienced drug investigator, to testify as an expert on the meaning of coded drug language. *See United States v. Watson*, 260 F.3d 301, 306–07 (3d Cir. 2001). That

Court's decision to exclude or admit evidence for an abuse of discretion, but we have plenary review of the District Court's interpretation of the Federal Rules of Evidence. *United States v. Mornan*, 413 F.3d 372, 377 (3d Cir. 2005).

At the outset, we reject Gilmore's assertion that the District Court admitted the evidence of his prior felony convictions for an improper purpose under Rule 404(b). Rule 404(b) prohibits the admission of evidence of past crimes "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). It does not, however, bar the use of such evidence for other purposes. *United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2002). Here, the District Court permitted the Government to ask Gilmore about his prior convictions for another purpose, namely to contradict Gilmore's testimony that he never sold drugs.

---

Gilmore disagrees with the Government about whether he used code is of no consequence. Fourth, Gilmore's testimony denying involvement in any drug conspiracy and offering an alternative explanation for his correspondences with Severino is in direct contradiction with the jury's guilty verdict. The District Court did not clearly err in finding Gilmore's testimony false, material, and made with the willful intent to provide false testimony, and, as a result, imposing a two-level enhancement under Sentencing Guideline § 3C1.1. *See United States v. Johnson*, 302 F.3d 139, 154 (3d Cir. 2002). Fifth, the District Court's within-Guideline sentence is reasonable. *See Rita v. United States*, 127 S. Ct. 2456, 2462 (2007).

Impeachment by contradiction is a means of "policing the 'defendant's obligation to speak the truth in response to proper questions.'" *United States v. Greenidge*, 495 F.3d 85, 99 (3d Cir. 2007) (quoting *United States v. Havens*, 446 U.S. 620, 626 (1980)). Accordingly, "'[w]here a defendant testifies on direct examination regarding a specific fact, the prosecution may prove on cross-examination that the defendant lied as to that fact.'" *Id*. (quoting *United States v. Gambino*, 951 F.2d 498, 503 (2d Cir. 1991)). Rule 607 of the Federal Rules of Evidence authorizes impeachment by contradiction, and Rule 403 governs its application. *Id*. Therefore, the Government may impeach a defendant's testimony with contradictory evidence unless the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Here, the District Court did not abuse its discretion in allowing the Government to ask Gilmore about his two prior felony drug convictions. Gilmore's denial concerning his involvement in drug sales was unqualified; he testified that he "never" sold drugs. His prior convictions indicate otherwise and are of undisputable probative value. Certainly, any similarities between the nature of Gilmore's prior drug convictions and his allegedly criminal conduct in this case have the potential to cause unfair prejudice; however, the District Court minimized that potential by not allowing the Government to enter the

10

certified judgments into evidence unless Gilmore denied the convictions, and by twice issuing a limiting instruction to the jury.

Our conclusion is consistent with those reached by other courts of appeal. *See, e.g.*, *United States v. Bender*, 265 F.3d 464, 470–71 (6th Cir. 2001) (permitting the government to cross-examine the defendant about prior drug trafficking convictions because she testified on direct examination that she had never sold drugs and did not start using them until 1992); *United States v. Norton*, 26 F.3d 240, 243–45 (1st Cir. 1994) (affirming the District Court's decision to allow the government to cross-examine the defendant about his prior conviction for unlawfully carrying a firearm after the defendant testified that "I never had a gun in my life in that car. Or on my possession or anywhere"); *United States v. Lopez*, 979 F.2d 1024, 1032–35 (5th Cir. 1993) (allowing the government to produce a record of the defendant's prior conviction for possession of marijuana in order to impeach the defendant's testimony that he had never seen the drug in person). Like Gilmore, the defendants in each of those cases had prior convictions that belied their blanket denials on the witness stand of ever engaging in conduct similar to the charged conduct. Like the District Court here, the trial courts in each of those cases issued a limiting instruction to the jury. *Bender*, 265 F.3d at 471; *Norton*, 26 F.3d at 245; *Lopez*, 979 F.2d at 1032. Like the courts of appeal in those cases, we hold that the District Court did not abuse its discretion here.

11

Gilmore suggests that the ages of his convictions should weigh against their admissibility. Indeed, Rule 609(b) sets two conditions on the use of a prior felony conviction to attack the credibility of a witness if the conviction is over ten years old: 1) its probative value must substantially outweigh its prejudicial effect, and 2) the proponent must give advance written notice to the adverse party that is sufficient to give the adverse party a fair opportunity to contest its use. Fed. R. Evid. 609(b).

Rule 609, however, does not govern here. Rule 609 controls the use of prior felony convictions to impeach a witness' general character for truthfulness, but impeachment by contradiction concerns the use of evidence to impeach a witness' specific testimony. *See Norton*, 26 F.3d at 243–44 (noting that "Rule 609 evidence is admissible for the purpose of attacking credibility generally," but that "[p]rior convictions are admissible under Rules 402 and 403 to contradict specific testimony"); *Lopez*, 979 F.2d. at 1033 ("The fundamental problem with the application of either Rule 608 or 609 is that neither rule applies 'in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue.'" (citations omitted)). Accordingly, prior felony convictions more than ten years old may be used to impeach by contradiction even if they do not satisfy Rule 609's balancing and notice conditions. *See Norton*, 26 F.3d at 244 (affirming the use of a twenty-nine year-old conviction because it was admissible under Rules 402 and 403); *Lopez*, 979 F.2d at 1032–34 (upholding the use of a seventeen year-old conviction

12

to impeach by contradiction because it passed Rule 403 balancing); *see also Bender*, 265 F.3d at 470–71 (allowing the use of two twelve year-old convictions to impeach the credibility of a witness who had made "misleading" statements).

Notwithstanding Rule 609's inapplicability, a prior conviction's age may still bear on the Rule 403 analysis required for impeachment by contradiction. For example, a conviction's age may affect its probative value. A witness' broad denial of ever selling drugs makes any drug sale conviction probative, regardless of its age. A more limited denial like "I don't sell drugs," however, may make the probative value of a prior drug sale conviction dependent on its age; the more recent the conviction, the more probative it will be. Additionally, the age of a conviction may influence its potential for unfair prejudice. Under certain circumstances, an older conviction might even be less prejudicial than a more recent one. *See Norton*, 26 F.3d at 244–45 (remarking that the fact that "[t]he conviction was 29 years old, and . . . [defendant's] transgression had occurred many years ago, when he was a 'very young man'" helped minimize the prejudicial effect of the conviction). Accordingly, a district judge faced with the proffer of past criminal conduct to impeach a witness' testimony by contradiction may properly consider the age of that conviction using standard Rule 403 analysis, though without resort to Rule 609.

Here, the ages of Gilmore's prior convictions offer him no aid. Any prior drug sale conviction, regardless of age, is

highly probative of whether Gilmore "never did" sell drugs. Any unfair prejudice resulting from the ages of the proffered convictions does not substantially outweigh this probative value.

## III.

Gilmore's complete denial of ever selling drugs opened the door to his prior felony drug convictions. The District Court did not abuse its discretion by giving the Government permission to step through that door. Accordingly, we will affirm the District Court's judgment.