[NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 97-1725 

 RENALDO PLEDGER,

 Petitioner, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Respondent, Appellee.

 

No. 97-2119 

 SEAN DIXON,

 Petitioner, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Respondent, Appellee.

 

No. 97-2245 

 EDWIN CARMICHAEL,

 Petitioner, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Respondent, Appellee.

 

No. 97-2297 

 STEVEN WADLINGTON,

 Petitioner, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Respondent, Appellee.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Walter Jay Skinner, Senior U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 
 Selya and Boudin, Circuit Judges. 

 

Renaldo Pledger, Edwin Carmichael and Steven Wadlington on 
memoranda pro se.
Sean Dixon on brief pro se. 
Donald K. Stern, United States Attorney, and Kevin J. Cloherty, 
Assistant United States Attorney, on brief for appellee in No. 97-
2119.

 

 February 5, 1988
 

 Per Curiam. In a joint trial, petitioners 

Renaldo Pledger, Sean Dixon, Edwin Carmichael and Steven

Wadlington were each convicted of multiple offenses stemming

from their involvement in a large-scale drug distribution

ring in Boston, Massachusetts. On direct appeal, this court

affirmed after rejecting a multitude of challenges to their

convictions and sentences. See United States v. Whiting, 28 

F.3d 1296 (1st Cir. 1994). Petitioners thereafter filed

separate motions for habeas relief under 28 U.S.C. 2255,

advancing a plethora of new claims. In each instance, the

district court denied relief and then declined to issue a

certificate of appealability (CAP). See 28 U.S.C.  

2253(c)(1). Petitioners have now submitted CAP requests to

this court. 

 In order to qualify for a CAP, a habeas petitioner must

make "a substantial showing of the denial of a constitutional

right," id. 2253(c)(2)--i.e., a showing that the issues are 

debatable among reasonable jurists, that a court could decide 

them in a different fashion, or that they are adequate to

deserve encouragement to proceed further, see, e.g., Barefoot 

v. Estelle, 463 U.S. 880, 893 n.4 (1983). Because we 

conclude that none of the petitioners has satisfied this

standard, the CAP applications will be denied and the appeals

terminated. 

 Petitioners have presented an assortment of overlapping

contentions, which we have divided into two categories. We

will first address a pair of joint challenges to the

convictions and sentences, and will then consider a number of

individual claims. Because most of the claims either consist

of, or are accompanied by, complaints of ineffective

assistance of counsel (IAC), and because they all prove

unavailing on the merits, we need not pause to consider

whether they each are cognizable in the habeas context or

whether any are subject to procedural default.

 Joint Claims 

 1. All four petitioners contend that the government

withheld notes of witness interviews in violation of its

obligations under Brady v. Maryland, 373 U.S. 83 (1963), and 

the Jencks Act, 18 U.S.C. 3500. It is undisputed that

several government witnesses engaged in debriefing sessions

prior to trial at which prosecutor Kelly and DEA special

agent Murphy took handwritten notes. During trial, the court

rejected defense requests for disclosure of such material.

Some time later, petitioners gained possession of notes that

the prosecutor had taken of one interview with the witness

Anser Adams. Insisting that those notes contained

exculpatory and impeachment material and were otherwise

discoverable under the Jencks Act, petitioners argue that the

government was remiss in not turning over all notes of all

 -4-

witness interviews. The district court justifiably concluded

otherwise. 

 The Jencks Act claim is entirely unavailing. As the

notes were never adopted by the witness and did not involve

grand jury testimony, they would fall within the statute's

purview only if they provided a "substantially verbatim"

account of what had been said. 18 U.S.C. 3500(e)(2). Such

an account must reflect the witness' own words "fully and

without distortion." Palermo v. United States, 360 U.S. 343, 

352 (1959); accord, e.g., United States v. Neal, 36 F.3d 

1190, 1198 (1st Cir. 1994), cert. denied, 117 S. Ct. 519 

(1996); United States v. Newton, 891 F.2d 944, 954 (1st Cir. 

1989). The notes here did not do so. Instead, they

evidenced "substantial selection of material" and contained

the prosecutor's "own interpretations or impressions" and

were thus "not to be produced." Palermo, 360 U.S. at 352-53; 

accord, e.g., United States v. Bennett, 75 F.3d 40, 47 (1st 

Cir.) (reviewing such a determination for clear error), cert. 

denied, 117 S. Ct. 130 (1996). 

 Nor have petitioners explained how the notes were both

"favorable" and "material" to the defense, United States v. 

Brimage, 115 F.3d 73, 79 (1st Cir.), cert. denied, 118 S. Ct. 

321 (1997), such that the withholding thereof might

constitute a Brady violation. It suffices here to observe 

that evidence is "material" if there is "a reasonable

 -5-

probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been

different." United States v. Blais, 98 F.3d 647, 651 (1st 

Cir. 1996), cert. denied, 117 S. Ct. 1000 (1997) (quoting 

United States v. Bagley, 473 U.S. 667, 682 (1985)); accord 

Kyles v. Whitley, 514 U.S. 419, 432-41 (1995). Especially 

given the amount of Brady and Jencks Act material that was 

disclosed and the extent to which the witnesses in question

were impeached at trial, petitioners have "failed to

articulate any theory demonstrating such a reasonable

probability." Blais, 98 F.3d at 651; accord, e.g., Brimage, 

115 F.3d at 79 (finding evidence to be non-material after

noting degree to which witness' character had been "sullied

in cross-examination"). Moreover, the weight of the evidence

against each of these petitioners--which we described at

length in the unpublished portion of our earlier opinion, see 

Whiting, supra, slip op. at 55-57 (Dixon), 61-62 (Pledger), 

66-68 (Carmichael), 68-70 (Wadlington)--would render any

Brady violation in this regard harmless, see, e.g., Bennett, 

75 F.3d at 47.

 We likewise disagree that the court erred in dismissing

these claims without convening a hearing or examining the

remaining witness notes in camera. A habeas petitioner is 

not entitled to an evidentiary hearing where, as here, "his

allegations are 'vague, conclusory, or palpably incredible.'"

 -6-

David v. United States, F.3d , , 1998 WL 21848, at 

*6 (1st Cir. 1998) (quoting Machibroda v. United States, 368 

U.S. 487, 495 (1962)); accord, e.g., United States v. McGill, 

11 F.3d 223, 225-26 (1st Cir. 1993). And because

petitioners' claims were unsupported by the set of notes

actually produced, we cannot fault the district court's

decision to forgo examination of the others. Compare United 

States v. Strahl, 590 F.2d 10, 14-15 (1st Cir. 1978) 

(cautioning against sole reliance on prosecutor's assurances

that interview notes were not covered by Jencks Act).1  1

 2. All petitioners but Pledger challenge the quantity

of drugs for which they were each held accountable at

sentencing. They contend, inter alia, that the court erred 

by failing to make individualized findings in this regard.

They also complain of counsel's failure to pursue these

matters, particularly in light of a clarifying amendment to

the guidelines that was adopted during the pendency of the

appeal. We perceive no error; indeed, we rejected a related

set of arguments on direct appeal.

 In order to calculate the quantity of drugs for which

each petitioner was responsible, so as to determine the

applicable base offense level, the sentencing court engaged

  

 1 Our rejection of the Brady/Jencks Act claims on the 1 
merits disposes of the subsidiary IAC claims. The further
suggestion in this regard that the prosecution engaged in
intentional misconduct is totally without record support.

 -7-

in a two-step process. It first estimated that the

organization as a whole had distributed an average of two

kilograms of cocaine per week during its existence. Relying

on the "relevant conduct" provision in U.S.S.G. 1B1.3, it

then multiplied this figure by the number of weeks that each

petitioner had been involved. On direct appeal, petitioners

challenged the two-kilograms-per-week estimate, contending

that it lacked evidentiary support, see Whiting, 28 F.3d at 

1303-05; we disagreed, describing the court's finding as a

"conservative estimate [that] left a fair margin of safety,"

id. at 1305. Petitioners now argue that the court erred by 

attributing that estimate to each of them without more

particularized inquiries into what quantities were

foreseeable and were within the scope of their respective

agreements.

 Petitioners' precise complaint is difficult to identify.

To the extent they are alleging that the court automatically

saddled each of them with the full amount of drugs involved

in the conspiracy without further inquiry, thereby applying

an erroneous legal standard, they are mistaken. As we

explained in the earlier appeal, petitioners "were held

responsible at sentencing for 'drugs [they] personally

handled or anticipated handling, and, under the relevant

conduct rubric, for drugs involved in additional acts that 

were reasonably foreseeable by [them] and were committed in 

 -8-

furtherance of the conspiracy.'" Whiting, 28 F.3d at 1304 

(emphasis added) (quoting United States v. Sepulveda, 15 F.3d 

1161, 1197 (1st Cir. 1993)).2 To the extent they are 2

alleging that the court's findings of foreseeability were

unsupported by the evidence (or that counsel should have so

contended), they fare no better. Three of the petitioners

(Pledger, Dixon and Wadlington) did voice such a challenge

below, and Wadlington pursued it on appeal--all without

success. See Whiting, supra, slip op. at 72-74. More 

important, there has been no showing how the court's findings

in this regard might possibly have constituted clear error.

 Petitioners' reliance on the 1992 revision of 1B1.3

(amendment 439) likewise proves unavailing. It is true that

this amendment was clarifying in nature and thus could have

been invoked on direct appeal. See, e.g., United States v. 

LaCroix, 28 F.3d 223, 227 n.4 (1st Cir. 1994); United States 

v. Carrozza, 4 F.3d 70, 74 n.2 (1st Cir. 1993). Yet we fail 

to see how petitioners would have benefited from doing so,

much less how their attorneys can be thought derelict for

having failed to do so. Both the 1990 version of 1B1.3

(which was applied at sentencing) and the 1992 version

  

 2 The presentence reports applied the same standard-- 2
stating that each petitioner was being "held accountable for
the drugs sold by the enterprise, that is, for the conduct of
others in furtherance of the execution of the jointly
undertaken conspiracy that was reasonably foreseeable by this
defendant, during the time of his involvement in the criminal
enterprise." 

 -9-

required that relevant conduct be "reasonably foreseeable."

And both required that it be "in furtherance of the jointly

undertaken criminal activity." As here relevant, what the

1992 amendment did was elaborate on this latter criterion by

explaining that "the court must first determine the scope of

the criminal activity the particular defendant agreed to

jointly undertake (i.e., the scope of the specific conduct 

and objectives embraced by the defendant's agreement)."

U.S.S.G. 1B1.3, comment. (n.2) (1992). 

 Yet this merely fleshed out the preexisting standard.

The earlier version likewise had referred to conduct being

"within the scope of the defendant's agreement." See  

1B1.3, comment. (n.1) (1990). Prior to the amendment, we had

explained that "the measure of a defendant's accountability

for drug transactions in which he was not personally involved

is usually congruent with the scope of his agreement with the

other participants in the criminal enterprise." United 

States v. Garcia, 954 F.2d 12, 16 (1st Cir. 1992). We have 

since indicated that "application note 2 [of the 1992

amendment], read as a whole, appears to use 'in furtherance'

and 'within the scope' interchangeably." LaCroix, 28 F.3d at 

227 n.5. Most important, petitioners have offered no factual

support for the assertion that their colleagues' drug sales

"were outside the scope of [petitioners'] agreement[s], or,

put another way, that those transactions were other than in

 -10-

furtherance of the jointly undertaken criminal activity."

Id. at 228.3 3 

 Individual Claims 

 1. Wadlington was convicted, among other offenses, of

possessing an unregistered shotgun in violation of 26 U.S.C.

 5861(d). The statutory definition of "firearm" required

proof that the shotgun possessed two characteristics: that it

had a barrel length of less than 18 inches, or an overall

length of less than 24 inches, and that it could fire (or be

restored to fire) shotgun shells. In its charge to the jury,

the court inadvertently omitted this definition--an oversight

that neither side brought to its attention. Wadlington

raised the matter on direct appeal but without success.

Subjecting the issue to plain-error scrutiny due to the lack

of objection below, we held that the error had not caused a

"miscarriage of justice" or seriously affected "the fairness,

integrity or public reputation of judicial proceedings."

Whiting, 28 F.3d at 1309 (quoting United States v. Olano, 507 

U.S. 725, 736 (1993)). In so concluding, we observed that

  

 3 A trio of subsidiary claims likewise miss the mark. 3
Petitioners contend that the court failed to notify them of
its tentative findings before imposing sentence, as called
for by U.S.S.G. 6A1.3(b) (1990). The record indicates
otherwise. They assert that the drug-quantity information on
which the court relied was inherently unreliable; we rejected
an identical claim on direct appeal. See Whiting, 28 F.3d at 
1305. And petitioners insist that counsel should have
requested an evidentiary hearing prior to sentencing; under
the circumstances, we find neither substandard performance by
counsel nor prejudice resulting therefrom. 

 -11-

the "undisputed evidence" showed that the statutory

definition had been met--meaning that there was "no risk"

that the omission had "resulted in the conviction of an

innocent man." Id. 

 Wadlington now raises the same issue by means of an IAC

claim, complaining of counsel's failure to object to the

omission. An IAC claim requires a showing of both deficient

performance and prejudice. The Supreme Court has described

the prejudice element as follows: "The defendant must show

that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the

outcome." Strickland v. Washington, 466 U.S. 668, 694 

(1984). No such reasonable probability has been

demonstrated; to the contrary, as we earlier concluded, it is

"clear that the jury would readily have convicted" had a

proper instruction been given. Whiting, 28 F.3d at 1309. 

 2. Dixon complains of improper advice from trial

counsel. Specifically, he contends that he wished to plead

guilty to his substantive distribution charge while

proceeding to trial on his conspiracy charge, but was

mistakenly informed he could not do so. Since this

allegation is presented in purely conclusory form, dismissal

was appropriate. See David, F.3d at , 1998 WL at *6. 

 -12-

Moreover, even if this allegation were true, Dixon has failed

to explain, and we are unable to perceive, how he was

prejudiced. The indictment charged (and the evidence showed)

that his distribution offense was committed in furtherance of

the conspiracy. As a result, a guilty plea to the former

would only have augmented the proof of his involvement in the

latter. Nor would there have been any discernible effect on

Dixon's sentence; the considerable evidence of his

participation in the conspiracy meant that, even if he had

been acquitted on the conspiracy count, the relevant-conduct

provision might well have yielded the same outcome.

 3. Wadlington criticizes his attorney for advising him

not to take the witness stand. Yet when "[u]naccompanied by

coercion, legal advice concerning exercise of the right to

testify infringes no right ... but simply discharges defense

counsel's ethical responsibility to the accused." Lema v. 

United States, 987 F.2d 48, 52 (1st Cir. 1993); accord, e.g., 

Bucuvalas v. United States, 98 F.3d 652, 658 (1st Cir. 1996). 

Wadlington has made no allegation of coercion and, given

Wadlington's criminal history, counsel's advice can hardly be

called into question.

 4. Carmichael argues that his attorney was remiss in

effectively abandoning a pretrial motion for a bill of

particulars concerning his money laundering charge. As he

notes, we declined on direct appeal to address an issue

 -13-

involving that motion because of counsel's action. See 

Whiting, slip op. at 66. Yet no prejudice thereby ensued; we 

went on to observe that "[h]ad counsel properly preserved the

issue, the government's provision of the Western Union

transfers would be sufficient to avoid any actual surprise or

prejudice." Id. Carmichael's more general complaints about 

the extent of preparation performed by counsel are likewise

unavailing.

 5. Pledger objects to the performance of his appellate

counsel. Specifically, he argues that counsel failed to

pursue a claim that the process of selecting counties from

which the petit jury pool was chosen operated in a racially

discriminatory manner. Yet the determination of which issues

have the best chance of succeeding on appeal obviously

entails the exercise of professional judgment. Judicial

scrutiny thereof "must be highly deferential," Strickland, 

466 U.S. at 689--particularly where, as here, there has been

no showing that the claim has any colorable merit. No

ineffective assistance has been demonstrated.4 4

 6. Pledger challenges the district court's alternative

holding that his petition was time-barred under AEDPA's one-

year statute of limitations. He contends that the "mailbox

  

 4 Several of the other petitioners also complain of 4
counsel's failure to pursue certain claims on appeal. As we
have determined each of those underlying claims to be without
merit, the attorneys' conduct in this regard cannot be
faulted.

 -14-

rule" governing the timing of a notice of appeal filed by an

inmate confined in an institution, see Houston v. Lack, 487 

U.S. 266 (1988); Fed. R. App. P. 4(c), should likewise apply

to a habeas petition filed by such an inmate. Having

rejected his various claims on the merits, we need not

address this argument. Pledger's further contention--that

AEDPA is inapplicable whenever the underlying criminal

conviction preceded its effective date, even when the habeas

petition was filed thereafter--is meritless. See Lindh v. 

Murphy, 117 S. Ct. 2059 (1997). 

 Conclusion 

 We need go no further.5 For these reasons, we share the 5

district court's assessment that none of the petitioners has

made a substantial showing of the denial of a constitutional

right. Their CAP applications are therefore denied.

 The applications of petitioners Pledger, Dixon, 

Carmichael and Wadlington for a certificate of appealability 

are each denied, and their respective appeals are terminated. 

  

 5 All claims not mentioned herein have been considered 5
and rejected. None requires comment.

 -15-