USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1725  RENALDO PLEDGER, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. ____________________ No. 97-2119  SEAN DIXON, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. ____________________ No. 97-2245  EDWIN CARMICHAEL, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. ____________________ No. 97-2297  STEVEN WADLINGTON, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Walter Jay Skinner, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Boudin, Circuit Judges. ______________ ____________________ Renaldo Pledger, Edwin Carmichael and Steven Wadlington on ________________ _________________ __________________ memoranda pro se. Sean Dixon on brief pro se. __________ Donald K. Stern, United States Attorney, and Kevin J. Cloherty, ________________ __________________ Assistant United States Attorney, on brief for appellee in No. 97- 2119. ____________________ February 5, 1988 ____________________ Per Curiam. In a joint trial, petitioners __________ Renaldo Pledger, Sean Dixon, Edwin Carmichael and Steven Wadlington were each convicted of multiple offenses stemming from their involvement in a large-scale drug distribution ring in Boston, Massachusetts. On direct appeal, this court affirmed after rejecting a multitude of challenges to their convictions and sentences. See United States v. Whiting, 28 ___ _____________ _______ F.3d 1296 (1st Cir. 1994). Petitioners thereafter filed separate motions for habeas relief under 28 U.S.C. 2255, advancing a plethora of new claims. In each instance, the district court denied relief and then declined to issue a certificate of appealability (CAP). See 28 U.S.C.  ___ 2253(c)(1). Petitioners have now submitted CAP requests to this court.  In order to qualify for a CAP, a habeas petitioner must make "a substantial showing of the denial of a constitutional right," id. 2253(c)(2)--i.e., a showing that the issues are ___ debatable among reasonable jurists, that a court could decide _____ them in a different fashion, or that they are adequate to deserve encouragement to proceed further, see, e.g., Barefoot ___ ____ ________ v. Estelle, 463 U.S. 880, 893 n.4 (1983). Because we _______ conclude that none of the petitioners has satisfied this standard, the CAP applications will be denied and the appeals terminated.  Petitioners have presented an assortment of overlapping contentions, which we have divided into two categories. We will first address a pair of joint challenges to the convictions and sentences, and will then consider a number of individual claims. Because most of the claims either consist of, or are accompanied by, complaints of ineffective assistance of counsel (IAC), and because they all prove unavailing on the merits, we need not pause to consider whether they each are cognizable in the habeas context or whether any are subject to procedural default. Joint Claims ____________ 1. All four petitioners contend that the government withheld notes of witness interviews in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and _____ ________ the Jencks Act, 18 U.S.C. 3500. It is undisputed that several government witnesses engaged in debriefing sessions prior to trial at which prosecutor Kelly and DEA special agent Murphy took handwritten notes. During trial, the court rejected defense requests for disclosure of such material. Some time later, petitioners gained possession of notes that the prosecutor had taken of one interview with the witness Anser Adams. Insisting that those notes contained exculpatory and impeachment material and were otherwise discoverable under the Jencks Act, petitioners argue that the government was remiss in not turning over all notes of all -4- witness interviews. The district court justifiably concluded otherwise.  The Jencks Act claim is entirely unavailing. As the notes were never adopted by the witness and did not involve grand jury testimony, they would fall within the statute's purview only if they provided a "substantially verbatim" account of what had been said. 18 U.S.C. 3500(e)(2). Such an account must reflect the witness' own words "fully and without distortion." Palermo v. United States, 360 U.S. 343, _______ _____________ 352 (1959); accord, e.g., United States v. Neal, 36 F.3d ______ ____ ______________ ____ 1190, 1198 (1st Cir. 1994), cert. denied, 117 S. Ct. 519 ____________ (1996); United States v. Newton, 891 F.2d 944, 954 (1st Cir. _____________ ______ 1989). The notes here did not do so. Instead, they evidenced "substantial selection of material" and contained the prosecutor's "own interpretations or impressions" and were thus "not to be produced." Palermo, 360 U.S. at 352-53; _______ accord, e.g., United States v. Bennett, 75 F.3d 40, 47 (1st ______ ____ ______________ _______ Cir.) (reviewing such a determination for clear error), cert. _____ denied, 117 S. Ct. 130 (1996). ______ Nor have petitioners explained how the notes were both "favorable" and "material" to the defense, United States v. ______________ Brimage, 115 F.3d 73, 79 (1st Cir.), cert. denied, 118 S. Ct. _______ ____________ 321 (1997), such that the withholding thereof might constitute a Brady violation. It suffices here to observe _____ that evidence is "material" if there is "a reasonable -5- probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Blais, 98 F.3d 647, 651 (1st _____________ _____ Cir. 1996), cert. denied, 117 S. Ct. 1000 (1997) (quoting ____________ United States v. Bagley, 473 U.S. 667, 682 (1985)); accord _____________ ______ ______ Kyles v. Whitley, 514 U.S. 419, 432-41 (1995). Especially _____ _______ given the amount of Brady and Jencks Act material that was _____ disclosed and the extent to which the witnesses in question were impeached at trial, petitioners have "failed to articulate any theory demonstrating such a reasonable probability." Blais, 98 F.3d at 651; accord, e.g., Brimage, _____ ______ ____ _______ 115 F.3d at 79 (finding evidence to be non-material after noting degree to which witness' character had been "sullied in cross-examination"). Moreover, the weight of the evidence against each of these petitioners--which we described at length in the unpublished portion of our earlier opinion, see ___ Whiting, supra, slip op. at 55-57 (Dixon), 61-62 (Pledger), _______ _____ 66-68 (Carmichael), 68-70 (Wadlington)--would render any Brady violation in this regard harmless, see, e.g., Bennett, _____ ___ ____ _______ 75 F.3d at 47. We likewise disagree that the court erred in dismissing these claims without convening a hearing or examining the remaining witness notes in camera. A habeas petitioner is _________ not entitled to an evidentiary hearing where, as here, "his allegations are 'vague, conclusory, or palpably incredible.'" -6- David v. United States, ___ F.3d ___, ___, 1998 WL 21848, at _____ _____________ *6 (1st Cir. 1998) (quoting Machibroda v. United States, 368 __________ _____________ U.S. 487, 495 (1962)); accord, e.g., United States v. McGill, ______ ____ _____________ ______ 11 F.3d 223, 225-26 (1st Cir. 1993). And because petitioners' claims were unsupported by the set of notes actually produced, we cannot fault the district court's decision to forgo examination of the others. Compare United _______ ______ States v. Strahl, 590 F.2d 10, 14-15 (1st Cir. 1978) ______ ______ (cautioning against sole reliance on prosecutor's assurances that interview notes were not covered by Jencks Act).1  1 2. All petitioners but Pledger challenge the quantity of drugs for which they were each held accountable at sentencing. They contend, inter alia, that the court erred __________ by failing to make individualized findings in this regard. They also complain of counsel's failure to pursue these matters, particularly in light of a clarifying amendment to the guidelines that was adopted during the pendency of the appeal. We perceive no error; indeed, we rejected a related set of arguments on direct appeal. In order to calculate the quantity of drugs for which each petitioner was responsible, so as to determine the applicable base offense level, the sentencing court engaged  ____________________ 1 Our rejection of the Brady/Jencks Act claims on the 1 _____ merits disposes of the subsidiary IAC claims. The further suggestion in this regard that the prosecution engaged in intentional misconduct is totally without record support. -7- in a two-step process. It first estimated that the organization as a whole had distributed an average of two kilograms of cocaine per week during its existence. Relying on the "relevant conduct" provision in U.S.S.G. 1B1.3, it then multiplied this figure by the number of weeks that each petitioner had been involved. On direct appeal, petitioners challenged the two-kilograms-per-week estimate, contending that it lacked evidentiary support, see Whiting, 28 F.3d at ___ _______ 1303-05; we disagreed, describing the court's finding as a "conservative estimate [that] left a fair margin of safety," id. at 1305. Petitioners now argue that the court erred by ___ attributing that estimate to each of them without more particularized inquiries into what quantities were foreseeable and were within the scope of their respective agreements. Petitioners' precise complaint is difficult to identify. To the extent they are alleging that the court automatically saddled each of them with the full amount of drugs involved in the conspiracy without further inquiry, thereby applying an erroneous legal standard, they are mistaken. As we explained in the earlier appeal, petitioners "were held responsible at sentencing for 'drugs [they] personally handled or anticipated handling, and, under the relevant conduct rubric, for drugs involved in additional acts that ____ were reasonably foreseeable by [them] and were committed in _____________________________________________________________ -8- furtherance of the conspiracy.'" Whiting, 28 F.3d at 1304 ______________________________ _______ (emphasis added) (quoting United States v. Sepulveda, 15 F.3d _____________ _________ 1161, 1197 (1st Cir. 1993)).2 To the extent they are 2 alleging that the court's findings of foreseeability were unsupported by the evidence (or that counsel should have so contended), they fare no better. Three of the petitioners (Pledger, Dixon and Wadlington) did voice such a challenge below, and Wadlington pursued it on appeal--all without success. See Whiting, supra, slip op. at 72-74. More ___ _______ _____ important, there has been no showing how the court's findings in this regard might possibly have constituted clear error. Petitioners' reliance on the 1992 revision of 1B1.3 (amendment 439) likewise proves unavailing. It is true that this amendment was clarifying in nature and thus could have been invoked on direct appeal. See, e.g., United States v. ___ ____ _____________ LaCroix, 28 F.3d 223, 227 n.4 (1st Cir. 1994); United States _______ _____________ v. Carrozza, 4 F.3d 70, 74 n.2 (1st Cir. 1993). Yet we fail ________ to see how petitioners would have benefited from doing so, much less how their attorneys can be thought derelict for having failed to do so. Both the 1990 version of 1B1.3 (which was applied at sentencing) and the 1992 version  ____________________ 2 The presentence reports applied the same standard-- 2 stating that each petitioner was being "held accountable for the drugs sold by the enterprise, that is, for the conduct of others in furtherance of the execution of the jointly undertaken conspiracy that was reasonably foreseeable by this defendant, during the time of his involvement in the criminal enterprise."  -9- required that relevant conduct be "reasonably foreseeable." And both required that it be "in furtherance of the jointly undertaken criminal activity." As here relevant, what the 1992 amendment did was elaborate on this latter criterion by explaining that "the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct ____ and objectives embraced by the defendant's agreement)." U.S.S.G. 1B1.3, comment. (n.2) (1992).  Yet this merely fleshed out the preexisting standard. The earlier version likewise had referred to conduct being "within the scope of the defendant's agreement." See  ___ 1B1.3, comment. (n.1) (1990). Prior to the amendment, we had explained that "the measure of a defendant's accountability for drug transactions in which he was not personally involved is usually congruent with the scope of his agreement with the other participants in the criminal enterprise." United ______ States v. Garcia, 954 F.2d 12, 16 (1st Cir. 1992). We have ______ ______ since indicated that "application note 2 [of the 1992 amendment], read as a whole, appears to use 'in furtherance' and 'within the scope' interchangeably." LaCroix, 28 F.3d at _______ 227 n.5. Most important, petitioners have offered no factual support for the assertion that their colleagues' drug sales "were outside the scope of [petitioners'] agreement[s], or, put another way, that those transactions were other than in -10- furtherance of the jointly undertaken criminal activity." Id. at 228.3 3 ___ Individual Claims _________________ 1. Wadlington was convicted, among other offenses, of possessing an unregistered shotgun in violation of 26 U.S.C. 5861(d). The statutory definition of "firearm" required proof that the shotgun possessed two characteristics: that it had a barrel length of less than 18 inches, or an overall length of less than 24 inches, and that it could fire (or be restored to fire) shotgun shells. In its charge to the jury, the court inadvertently omitted this definition--an oversight that neither side brought to its attention. Wadlington raised the matter on direct appeal but without success. Subjecting the issue to plain-error scrutiny due to the lack of objection below, we held that the error had not caused a "miscarriage of justice" or seriously affected "the fairness, integrity or public reputation of judicial proceedings." Whiting, 28 F.3d at 1309 (quoting United States v. Olano, 507 _______ _____________ _____ U.S. 725, 736 (1993)). In so concluding, we observed that  ____________________ 3 A trio of subsidiary claims likewise miss the mark. 3 Petitioners contend that the court failed to notify them of its tentative findings before imposing sentence, as called for by U.S.S.G. 6A1.3(b) (1990). The record indicates otherwise. They assert that the drug-quantity information on which the court relied was inherently unreliable; we rejected an identical claim on direct appeal. See Whiting, 28 F.3d at ___ _______ 1305. And petitioners insist that counsel should have requested an evidentiary hearing prior to sentencing; under the circumstances, we find neither substandard performance by counsel nor prejudice resulting therefrom.  -11- the "undisputed evidence" showed that the statutory definition had been met--meaning that there was "no risk" that the omission had "resulted in the conviction of an innocent man." Id. ___ Wadlington now raises the same issue by means of an IAC claim, complaining of counsel's failure to object to the omission. An IAC claim requires a showing of both deficient performance and prejudice. The Supreme Court has described the prejudice element as follows: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694 __________ __________ (1984). No such reasonable probability has been demonstrated; to the contrary, as we earlier concluded, it is "clear that the jury would readily have convicted" had a proper instruction been given. Whiting, 28 F.3d at 1309. _______ 2. Dixon complains of improper advice from trial counsel. Specifically, he contends that he wished to plead guilty to his substantive distribution charge while proceeding to trial on his conspiracy charge, but was mistakenly informed he could not do so. Since this allegation is presented in purely conclusory form, dismissal was appropriate. See David, ___ F.3d at ___, 1998 WL at *6. ___ _____ -12- Moreover, even if this allegation were true, Dixon has failed to explain, and we are unable to perceive, how he was prejudiced. The indictment charged (and the evidence showed) that his distribution offense was committed in furtherance of the conspiracy. As a result, a guilty plea to the former would only have augmented the proof of his involvement in the latter. Nor would there have been any discernible effect on Dixon's sentence; the considerable evidence of his participation in the conspiracy meant that, even if he had been acquitted on the conspiracy count, the relevant-conduct provision might well have yielded the same outcome. 3. Wadlington criticizes his attorney for advising him not to take the witness stand. Yet when "[u]naccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right ... but simply discharges defense counsel's ethical responsibility to the accused." Lema v. ____ United States, 987 F.2d 48, 52 (1st Cir. 1993); accord, e.g., _____________ ______ ____ Bucuvalas v. United States, 98 F.3d 652, 658 (1st Cir. 1996). _________ _____________ Wadlington has made no allegation of coercion and, given Wadlington's criminal history, counsel's advice can hardly be called into question. 4. Carmichael argues that his attorney was remiss in effectively abandoning a pretrial motion for a bill of particulars concerning his money laundering charge. As he notes, we declined on direct appeal to address an issue -13- involving that motion because of counsel's action. See ___ Whiting, slip op. at 66. Yet no prejudice thereby ensued; we _______ went on to observe that "[h]ad counsel properly preserved the issue, the government's provision of the Western Union transfers would be sufficient to avoid any actual surprise or prejudice." Id. Carmichael's more general complaints about ___ the extent of preparation performed by counsel are likewise unavailing. 5. Pledger objects to the performance of his appellate counsel. Specifically, he argues that counsel failed to pursue a claim that the process of selecting counties from which the petit jury pool was chosen operated in a racially discriminatory manner. Yet the determination of which issues have the best chance of succeeding on appeal obviously entails the exercise of professional judgment. Judicial scrutiny thereof "must be highly deferential," Strickland, __________ 466 U.S. at 689--particularly where, as here, there has been no showing that the claim has any colorable merit. No ineffective assistance has been demonstrated.4 4 6. Pledger challenges the district court's alternative holding that his petition was time-barred under AEDPA's one- year statute of limitations. He contends that the "mailbox  ____________________ 4 Several of the other petitioners also complain of 4 counsel's failure to pursue certain claims on appeal. As we have determined each of those underlying claims to be without merit, the attorneys' conduct in this regard cannot be faulted. -14- rule" governing the timing of a notice of appeal filed by an inmate confined in an institution, see Houston v. Lack, 487 ___ _______ ____ U.S. 266 (1988); Fed. R. App. P. 4(c), should likewise apply to a habeas petition filed by such an inmate. Having rejected his various claims on the merits, we need not address this argument. Pledger's further contention--that AEDPA is inapplicable whenever the underlying criminal conviction preceded its effective date, even when the habeas petition was filed thereafter--is meritless. See Lindh v. ___ _____ Murphy, 117 S. Ct. 2059 (1997). ______ Conclusion __________ We need go no further.5 For these reasons, we share the 5 district court's assessment that none of the petitioners has made a substantial showing of the denial of a constitutional right. Their CAP applications are therefore denied. The applications of petitioners Pledger, Dixon, ________________________________________________________ Carmichael and Wadlington for a certificate of appealability _____________________________________________________________ are each denied, and their respective appeals are terminated. _____________________________________________________________  ____________________ 5 All claims not mentioned herein have been considered 5 and rejected. None requires comment. -15-